IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROGER ZUIDEMA )<br>3294 Walters Rd )<br>Creedmoor, NC 27522 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NFI INDUSTRIES, INC. )<br>2 Cooper Street )<br>Camden, NJ 08102 )<br>)<br>**Serve also:** )<br>NFI INDUSTRIES, INC. )<br>c/o Corporation Service Company )<br>2626 Glenwood Avenue, Suite 500 )<br>Raleigh, NC 27608 )<br>)<br>Defendant. ) | **COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Roger Zuidema, by and through undersigned counsel, files as his Complaint against NFI Industries, Inc. ("NFI"). Plaintiff states and avers the following:

## PARTIES

1. Zuidema is a resident of the city of Creedmoor, county of Granville, state of North Carolina.

2. NFI is a foreign corporation that operates a place of business located at 3815 Senator Ralph Scott Parkway, Mebane NC 274302.

3. NFI was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq*.

4. NFI was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C § 2601, *et seq*.

**JURISDICTION & VENUE**

5. NFI hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over NFI comports with due process.

6. This cause of action arose from or relates to the contracts of NFI with North Carolina residents, thereby conferring specific jurisdiction over NFI.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq*.

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

9. Within 180 days of the conduct alleged below, Zuidema filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2024-00264 against NFI operating at 2 Cooper Street, Camden, NJ 08102.

10. On or about May 23, 2024 the EEOC issued and mailed a Notice of Right to Sue letter to Zuidema regarding the Charges of Discrimination brought by Zuidema against NFI in EEOC Agency Charge No. 433-2024-00264.

11. Zuidema received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Zuidema has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Zuidema has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Zuidema is a former employee of NFI.

15. NFI was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C §2611(4).

16. Zuidema had a staph infection from a broken coccyx.

17. Upon information and belief, Zuidema's broken coccyx was caused by faulty seats in two NFI trucks.

18. Upon information and belief, NFI was aware of the faulty seats.

19. Upon information and belief, NFI did not act to prevent its workers from sitting in the faulty seats.

20. Upon information and belief, NFI did not act to fix the faulty seats.

21. Zuidema suffered symptoms of a staph infection beginning in or around April 2023.

22. Zuidema's staph infection damaged his coccyx further such that it has not yet fully recovered ("Zuidema's Disability").

23. Zuidema still suffers from the symptoms of the staph infection from time to time.

24. Zuidema's Disability substantially limits Zuidema's major life functions, including caring for himself, performing manual tasks, walking, standing, sitting, reaching, lifting, bending, and working.

25. Zuidema's Disability makes it so that he cannot sit for more than 30 minutes at a time.

26. Zuidema is disabled within the meaning of the ADA.

27. Zuidema disclosed to Defendant that he suffers from a broken coccyx.

28. In the alternative, NFI perceived Zuidema as being disabled.

29. Despite this actual or perceived disabling condition, Zuidema was still able to perform the essential functions of his job with or without reasonable accommodation(s).

30. On or about April 11, 2023, Zuidema fell ill with what he believed was COVID-19.

31. On or about April 11, 2023, Zuidema went to urgent care, but tested negative for COVID-19.

32. While at the urgent care, Zuidema suffered excruciating pain and debilitating muscle spasms in his posterior.

33. After several urgent care and hospital visits attempting to identify the problem, Zuidema was hospitalized again on or about May 10, 2023.

34. Zuidema's wife, D'Amaris Zuidema ("Mrs. Zuidema"), notified Jessica Guimont of Zuidema's hospitalization.

35. Zuidema requested leave from NFI to recover from Zuidema's Disability ("Leave Request").

36. At all times relevant herein, Zuidema was employed by NFI for at least 12 months and had at least 1,250 hours of service with NFI and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

37. During all relevant times, Zuidema qualified for FMLA leave.

38. Zuidema's Leave Request put NFI on notice for his need for medical leave.

39. Zuidema's Leave Request was a request for accommodation.

40. Zuidema's Leave Request was reasonable.

41. Zuidema's Leave Request would not cause undue hardship on NFI.

42. Zuidema made his Leave Request to Guimont.

43. Guimont worked for NFI.

44. Guimont worked for NFI as a Logistics Coordinator.

4

45. A Logistics Coordinator supervises Drivers at NFI.

46. A Logistics Coordinator has disciplinary authority at NFI.

47. Guimont was the only active Logistics Coordinator at NFI at the time of Zuidema's Leave Request.

48. Guimont assisted Zuidema in putting Zuidema on FMLA leave.

49. Defendant granted Zuidema's request for FMLA leave.

50. Zuidema utilized FMLA leave from April 29, 2023 to July 21, 2023.

51. After Zuidema was admitted to the hospital on May 10, 2023, his medical providers then identified his medical conditions.

52. During the FMLA Leave, Zuidema underwent extensive treatment for Zuidema's Disability until about July 8, 2023.

53. Zuidema was discharged from the hospital on or about May 17, 2023.

54. Zuidema underwent extensive outpatient treatment at Raleigh Infectious Disease Associates until on or about July 8, 2023.

55. Zuidema took an oral antibiotic from July 8, 2023 through August 8, 2023.

56. On or about July 15, 2023, Zuidema called Randy Riedel ("Riedel"), Terminal Manager, regarding Zuidema's return to work (the "Return to Work Call").

57. Zuidema requested to return to work on light duty ("Zuidema's Accommodation Request").

58. Zuidema requested to do either sedentary or light duty, meaning a maximum of exerting up to 20 pounds of force occasionally, up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects.

59. Light duty also included performing work such as data input, dispatching, and working in the returns operating an electric pallet jack.

5

60. During the Return to Work Call, Zuidema told Riedel about Zuidema's Disability.

61. During the Return to Work Call, Zuidema provided Riedel with medical documentation.

62. Shortly after the Return to Work Call, Zuidema provided Riedel with medical documentation regarding Zuidema's disability.

63. Zuidema's Accommodation Request was reasonable.

64. Zuidema's accommodation would not cause undue hardship on NFI.

65. NFI has no contemporaneously created documents reflecting any effort to determine if Zuidema's Accommodation Request would cause undue hardship.

66. After Zuidema's Accommodation Request, no one at NFI engaged in an interactive process to discuss with Zuidema whether and/or how to accommodate his disability.

67. NFI had previously put other drivers on light duty.

68. NFI gave Richard Graves ("Graves") light duty.

69. NFI gave Chris Gilham ("Gilham") light duty.

70. NFI gave Daryl Pitman ("Pitman") light duty.

71. Graves worked as a driver for NFI.

72. Gilham worked as a driver for NFI.

73. Pitman worked as a driver for NFI.

74. Graves received light duty because his license was suspended for three months.

75. Gilham received light duty because Gilham suffered a shoulder injury on the job for which he filed a claim for workers' compensation benefits.

76. Pitman received light duty because his license was suspended.

77. Zuidema was not granted Zuidema's Accommodation Request.

78. NFI failed to accommodate Zuidema with Zuidema's Accommodation Request.

6

79. NFI failed to accommodate Zuidema differently than other similarly situated individuals because of his disability.

80. NFI failed to accommodate Zuidema differently than other similarly situated individuals because of his perceived disability.

81. NFI failed to accommodate Zuidema differently than other similarly situated individuals in retaliation for taking FMLA leave.

82. In or around July 23, 2023, Zuidema prepared to return to work.

83. In or around July 23, 2023, Zuidema submitted his request for intermittent leave under the FMLA.

84. As a result of Defendant refusing to accommodate Zuidema, Defendant did not permit Zuidema to return to his prior position as a Driver.

85. As a result of Defendant refusing to accommodate Zuidema, Defendant did not permit Zuidema to return to his prior position as a Driver on light duty.

86. As Defendant did not permit Zuidema to return to his position of Driver with his physical restrictions, Zuidema's only option was to find a new position within Defendant, or Zuidema's employment would be terminated.

87. Guimont suggested that Zuidema could apply for the position of Logistics Coordinator.

88. Zuidema was qualified for the Logistics Coordinator position.

89. Zuidema was qualified by his skills, training, and experience to be a Logistics Coordinator.

90. Being a Logistics Coordinator did not require Zuidema to drive or sit.

91. Zuidema could perform the essential functions of the Logistics Coordinator role with or without reasonable accommodation(s).

92. Zuidema was the most qualified driver for the Logistics Coordinator position.

93. Zuidema applied for the Logistics Coordinator position.
94. Zuidema applied for the Logistics Coordinator position as an alternative request for accommodation ("Alternative Request for Accommodation").
95. Zuidema interviewed with John Chapman ("Chapman"), Regional Director, for the Logistics Coordinator position.
96. Zuidema interviewed with Chapman on or about July 23, 2023.
97. Zuidema was not selected for the Logistics Coordinator role.
98. Zuidema was not selected for the Logistics Coordinator role because of his disability.
99. Zuidema was not selected for the Logistics Coordinator role because of his perceived disability.
100. Zuidema was not selected for the Logistics Coordinator role because of Zuidema's Request for Accommodation.
101. Zuidema was not selected for the Logistics Coordinator role in retaliation for Zuidema's request for FMLA.
102. Upon information and belief, NFI selected a less qualified individual to fill that role.
103. NFI did not contact Zuidema regarding his light duty request.
104. NFI did not contact Zuidema regarding the Logistics Coordinator role after his interview.
105. Zuidema attempted to contact NFI multiple times.
106. Zuidema attempted to contact NFI through his local Human Resources Representative as well.
107. On or about August 15, 2023, Zuidema received a call from a NFI representative (the "Termination Call").
108. During the Termination Call, Katina Last Name Unknown identified herself as the NFI representative.

109. During the Termination Call, Katina LNU informed Zuidema that he had been terminated.

110. During the Termination Call, Katina LNU informed Zuidema that he had been terminated effective August 11, 2023.

111. During the Termination Call, Katina LNU informed Zuidema that he had been terminated for not being able to work within the Department of Transportation's regulations.

112. During the Termination Call, Zuidema asked Katina LNU which regulation Katina LNU was referring to.

113. During the Termination Call, Katina LNU did not identify a regulation.

114. Instead, Katina LNU told Zuidema that NFI wanted a driver who could drive for at least five hours without a break.

115. On or about August 23, 2023 Zuidema received a call from Lory McDaniel ("McDaniel"), Human Resources Representative for NFI (the "Purported Rescission Call").

116. During the Purported Recission Call, McDaniel told Zuidema that his termination was a mistake.

117. During the Purported Recission Call, McDaniel told Zuidema he was being reinstated.

118. McDaniel did not provide information to Zuidema about returning to work during the Purported Recission Call.

119. During the Purported Recission Call, McDaniel did not provide information to Zuidema about Zuidema's Accommodation Request.

120. During the Purported Recission Call, McDaniel stated NFI's worker's compensation department would reach out to Zuidema.

121. NFI's worker's compensation department did not reach out to Zuidema.

122. NFI did not reach out to Zuidema following the Purported Recission Call.

123. NFI did not grant Zuidema's Accommodation Request.

124. NFI did not place Zuidema in an alternate position for which he was qualified.

125. NFI did not actually reinstate Zuidema.

126. NFI terminated Zuidema's employment.

127. NFI terminated Zuidema's employment because of his disability.

128. NFI terminated Zuidema's employment because of his perceived disability.

129. NFI terminated Zuidema's employment in retaliation for Zuidema's Accommodation Request.

130. NFI terminated Zuidema's employment in retaliation for his Alternative Request for Accommodation.

131. NFI terminated Zuidema's employment in retaliation for taking FMLA leave.

132. NFI did not proffer a legitimate non-discriminatory reason for terminating Zuidema.

133. Upon information and belief, after Zuidema's termination of employment, NFI hired or retained an individual outside of Zuidema's protected class to replace Zuidema.

134. As a result of NFI's conduct, Zuidema suffered, and will continue to suffer damages.

## COUNT I: <u>DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA</u>

135. Zuidema restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Zuidema suffers from a damaged coccyx.

137. Zuidema's Disability substantially limits Zuidema's major life functions, including caring for himself, performing manual tasks, walking, standing, sitting, reaching, lifting, bending, and working. Zuidema's Disability makes it so that he cannot sit for more than 30 minutes at a time.

138. Zuidema is disabled.

139. In the alternative, NFI perceived Zuidema as being disabled.

140. Zuidema's condition constituted a physical impairment.

141. NFI treated Zuidema differently than other similarly-situated employees based on his disabling condition.

142. NFI treated Zuidema differently than other similarly-situated employees based on his perceived disabling condition.

143. On or about August 11, 2023, NFI terminated Zuidema's employment without just cause.

144. NFI terminated Zuidema's employment based on his disability.

145. NFI terminated Zuidema's employment based on his perceived disability.

146. NFI terminated Zuidema's employment because of his requests for accommodation.

147. NFI violated The Americans with Disabilities Act (ADA) section 42 U.S.C. 126 § 12101 *et al.*

148. Zuidema suffered emotional distress as a result of NFIs' conduct and is entitled to emotional distress damages pursuant to the ADA.

149. As a direct and proximate result of NFI's conduct, Zuidema suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT II: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT

150. Zuidema informed NFI of his disabling condition.

151. Zuidema requested accommodations from NFI to assist with his disabilities including moving to a different position for which he was qualified.

152. Zuidema's requested accommodations were reasonable.

153. There was an accommodation available that would have been effective and would have not posed an undue hardship to NFI.

154. NFI could have allowed Zuidema to work on light duty without causing NFI undue hardship.

155. NFI could have allowed Zuidema to work in the open Logistics Coordinator position without undue hardship.

156. NFI failed to engage in the interactive process of determining whether Zuidema needed an accommodation.

157. NFI failed to provide Zuidema with accommodations.

158. NFI violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

159. As a direct and proximate result of NFI's conduct, Zuidema suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: **RETALIATION IN VIOLATION OF THE FMLA**

160. Zuidema restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

161. During Zuidema's employment, he qualified for FMLA leave.

162. During Zuidema's employment, he was entitled to utilize FMLA leave as a result of his own serious medical condition.

163. Zuidema's Disability was a serious medical condition.

164. During his employment, Zuidema utilized FMLA leave.

165. After Zuidema utilized his qualified FMLA leave, NFI retaliated against him.

166. NFI retaliated against Zuidema by terminating his employment.

167. NFI retaliated against Zuidema by failing to accommodate him.

168. NFI retaliated against Zuidema by refusing to transfer him to a position that he would have been able to perform with his disability, with or without reasonable accommodation.

169. NFI willfully retaliated against Zuidema in violation of U.S.C. § 2615(a).

170. As a direct and proximate result of NFI's wrongful conduct, Zuidema is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Roger Zuidema demands from NFI the following:

(a) An award against NFI of compensatory and monetary damages to compensate Zuidema for compensatory damages, non-compensatory damages, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against NFI in an amount in excess of $25,000.

(c) An award of reasonable attorneys' fees and non-taxable costs for Zuidema's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorney For Plaintiff*
*Roger Zuidema*

**JURY DEMAND**

Plaintiff Roger Zuidema demands a trial by jury by the maximum number of jurors permitted.

>                    /s/ *Evan Gungor*
>                    Evan G. Gungor, Esq. (60902)